# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ENRICO F. LANZA, JR., | : | Civil No. 3:17-cv-1318 |
| | : | |
| Plaintiff | : | (Judge Mariani) |
| | : | |
| v. | : | |
| | : | |
| MICHAEL A. MOCLOCK, M.D., *et al.*, | : | |
| | : | |
| Defendants | : | |

## **MEMORANDUM**

Plaintiff, Enrico Lanza ("Lanza"), an inmate currently confined at the State

Correctional Institution in Coal Township, Pennsylvania ("SCI-Coal Township"), initiated the

instant action pursuant to 42 U.S.C. § 1983. (Doc. 1). Named as Defendants are Karen

(Merritt) Scully, Thomas S. McGinley, Michael A. Moclock, M.D., Nicholle Boguslaw, PA-C,

and Wexford Health Sources, Inc. (*Id.*).

Defendants Merritt Scully and McGinley filed an answer to the complaint with

affirmative defenses. (Doc. 14). Defendants Moclock, Boguslaw, and Wexford filed

motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Docs. 24, 26).

The motions are ripe for disposition and, for the reasons set forth below, the Court will grant

the motions to dismiss.[1]

---

[1]     Although Defendants Merritt Scully and McGinley are not parties to the pending motions to
dismiss, the Court finds that they are entitled to dismissal of the claims against them because Lanza fails
to state a plausible claim for relief, and the claims are barred by the applicable statute of limitations. *See,
e.g., Davis v. Gauby*, 408 F. App'x 524, 526 (3d Cir. 2010) (unpublished) ("Although the statute of
limitations is an affirmative defense, *sua sponte* dismissal [under 28 U.S.C. § 1915(e)(2)(B)] is appropriate

## I.    Motion to Dismiss Standard of Review

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege

"enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must

aver "factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct.

1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic

recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop.*

*Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words,

"[f]actual allegations must be enough to raise a right to relief above the speculative level."

*Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013)

(internal citations and quotation marks omitted). A court "take[s] as true all the factual

---

when 'the defense is obvious from the face of the complaint and no further factual record is required to be developed.'") (quoting *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006)). *See also Ball v. Famiglio*, 726 F.3d 448, 452 (3d Cir. 2013) (a federal court may properly dismiss an action *sua sponte* under the screening provisions of 28 U.S.C. § 1915(e)(2)(B) if "the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief."). Defendants Merritt Scully and McGinley have properly raised the statute of limitations as an affirmative defense in their answer. (*See* Doc. 14; *see also* FED. R. CIV. P. 12(b) (requiring a defendant to plead an affirmative defense, such as a statute of limitations defense, in his answer to the complaint); FED. R. CIV. P. 8(c)). Furthermore, the legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) is identical to the legal standard used when ruling on Rule 12(b)(6) motions. *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying FED. R. CIV. P. 12(b)(6) standard to dismissal for failure to state a claim under § 1915(e)(2)(B)).

2

allegations in the Complaint and the reasonable inferences that can be drawn from those

facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v.*

*Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation

marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to
> determine the sufficiency of a complaint: First, the court must take note of the
> elements a plaintiff must plead to state a claim. Second, the court should
> identify allegations that, because they are no more than conclusions, are not
> entitled to the assumption of truth. Finally, where there are well-pleaded
> factual allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged - but it has not show[n] - that the

pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks

omitted). This "plausibility" determination will be a "context-specific task that requires the

reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court

must permit a curative amendment unless such an amendment would be inequitable or

futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a
> defendant moves to dismiss it, unless the district court finds that amendment

would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

## II. Allegations of the Complaint and Supporting Exhibits

The allegations of the complaint relate to Lanza's medical care and treatment at SCI-Coal Township. (Doc. 4). Lanza alleges that Defendants were deliberately indifferent to his serious medical needs. (*Id.*).

Lanza alleges that he separated and fractured his shoulder in 2011. (Doc. 4, p. 3). He further alleges that six years later, he underwent an x-ray of his shoulder, and Defendant Moclock allegedly "said there was nothing that could be done about it and refused medical treatment." (*Id.*). Lanza asserts that Defendants Boguslaw and Moclock refused medical treatment and pain medication for his shoulder, despite constant pain and loss of arm function. (*Id.*). He claims that Defendant Moclock stopped the operation he was going to have for his separated shoulder, refused the injections that were prescribed by a specialist, and refused to order pain medication. (*Id.* at p. 6).

Lanza states that he underwent back surgery for spinal stenosis in 2016. (Doc. 4, p. 3). He alleges that Defendant Moclock failed to provide the medications prescribed by the neurosurgeon. (*Id.* at pp. 3, 6). Lanza claims that he experienced back and leg pain after the back surgery, but did not receive any treatment. (*Id.* at p. 3).

Lanza further alleges that Defendant Boguslaw charged him for sick call, forced him

4

to buy Motrin from the commissary, falsified medical records, "conspired" with Defendant Moclock to refuse medication, and lied to him about ordering tests. (Doc. 4, p. 6).

Lanza also alleges that Defendant Moclock abused drugs and alcohol in 1999, 2001, and 2004. (Doc. 4, p. 7). Lanza asserts that Defendant Moclock underwent a mental health and physical examination, and was allegedly diagnosed with opioid dependence, alcohol dependence, and major depression. (Id.). Lanza states that Defendant Moclock is "believed" to have been charged with driving under the influence in 2014. (Id.).

For relief, Lanza seeks one million dollars for every year he has suffered, for a total of six million dollars, from Defendant Moclock. (Doc. 4, p. 6). He seeks one million dollars from Defendants Boguslaw and McGinley, two million dollars from Defendant Merritt Scully, and five million dollars from Defendant Wexford. (Id. at pp. 6-7). Additionally, Lanza requests that the Court revoke the professional licenses of Defendants Moclock, Boguslaw, and Merritt Scully, and void the contract between the Department of Corrections and Wexford. (Id. at p. 6).

Lanza attached the following exhibits to his complaint.

On August 26, 2015, Lanza filed an inmate request to staff member form complaining about medical co-payments and the requirement of filing sick call slips. (Doc. 4, p. 27). Lanza also requested a copy of all of his medical records. (Id.). In response, Lanza was advised that he may submit a request to review all of his medical records. (Id.).

5

On September 9 and 28, 2015, Lanza filed inmate request to staff member forms

complaining about pain in his legs. (*Id.* at p. 28-29). He was advised to sign up for sick call.

(*Id.*).

On October 29, 2015, Lanza filed a grievance requesting renewal of his Motrin

prescription, and requesting reimbursement of a $25.00 co-pay. (Doc. 4, p. 30). The

grievance was denied on initial review as follows:

> Mr. Lanza, KG8741, the record indicates that your last order for motrin
> expired in March. By policy, it is at the discretion of the practitioner as
> whether or not you are charged for a visit and or medication. Additionally,
> any unscheduled visit made at an inmate[']s request is also charged. Copay
> applies in this case.
>
> I consider this grievance denied.

(*Id.* at p. 31). On appeal, the Facility Manager upheld the initial review response as follows:

> I have reviewed your appeal and initial review response by Mr. Yackiel, RN
> Supervisor. I am not a medical professional neither are you so we both must
> rely on those who are to give us the best medical advice. You believe they
> are wrong however after speaking to Ms. Merritt, CHCA who consulted with
> the Medical Director, I have been assured the level of care being provided to
> you is in fact appropriate.
>
> The Facility Manager upholds the initial review response.

(*Id.* at p. 33). Lanza then appealed to the Secretary's Office of Inmate Grievance and

Appeals ("SOIGA"). (*Id.* at p. 44). The Chief Grievance Officer denied Lanza's appeal, and

found as follows:

> This office is in receipt of your appeal, has reviewed all applicable documents,

6

and consulted with relevant professional staff. In your grievance, you state
that medical is forcing you to sign up for sick call so you can be charged for a
part of your chronic medications. You indicate that this has been done
multiple times and request to be reimbursed $25.00 and have the Motrin
renewed with your other medications every six months.

A review of the records by the Bureau of Health Care Services (BHCS)
reflects that the medical care provided was reasonable and appropriate for
pain management and the recommendation of obtaining NSAID medication at
the commissary. These clinical decisions are made by the attending
practitioner. You are encouraged to participate in your treatment plan and to
discuss your concerns or changes of condition with a practitioner. No
evidence of neglect or deliberate indifference was found.

The sick call visits in question to be evaluated by a practitioner when
prescribed medications have expired by policy are at the discretion of the
practitioner. An inmate shall pay a co-pay fee for any non-emergency
medical service provided at the inmate's request. Based on the review, your
appeal and any requested relief is denied.

(*Id.*).

On November 18, 2015, Lanza filed a grievance again complaining about medical

co-pays and being charged for Motrin. (Doc. 4, pp. 34, 39). The grievance was denied on

initial review as follows:

Mr. Lanza,

*Your grievance states that on 10/12/15 you were charged for pain meds that*
*are part of your chronic problems and that you have been being [sic] charged*
*for chronic pain medications from 10/6/14 through 10/12/15 and you want the*
*money put back.*

I reviewed your account information and your medical record documentation
from 10/12/15. You were charged $5.00 for the medical co-pay. You were
not charged for medication. The co-pay fee for the visit is appropriate. You

7

are required to pay the medical co-pay fee for any non-emergency medical service provided at your request and for the initial prescription. Motrin is not a chronic care medication and can be purchased in the commissary. You were not charged on 10/12/15 for medication. There will be no refund for medication for other dates from 10/6/14 through 10/12/15 as charges are appropriate. This grievance is denied.

(*Id.* at p. 34). On appeal, the Facility Manager upheld the initial review response, and found

as follows:

I have reviewed your appeal and initial review response by CHCA Merritt, while reviewing relevant records. Both CHCA Merritt and relevant records indicate that you have been seen for numerous issues by local medical staff, as well as outside specialists. As recent as12/4/15, you had a consult with Vascular Surgery and as a result of such, no follow-up care was noted. You are now scheduled to be seen by Dr. Moclock on Wednesday, January 27, 2015. You will not be charged for this visit.

When reviewing your medical charges with CHCA Merritt, all co-pay charges fall in accordance with current policy. The medication you reference in your appeal is noted as being available via commissary. I suggest you purchase such as a means for pain management. It is my determination that the proper medical care is being provided to you.

Based upon what is noted above, the Facility Manager upholds the initial review response.

(*Id.* at p. 41). Lanza then appealed to the SOIGA, and the Chief Grievance Officer denied

the appeal as follows:

Your concern of not being provided proper medical care/pain management was reviewed by the staff of the Bureau of Health Care Services. They reviewed the medical record and determined that the medical care provided was reasonable and appropriate, including pain management. You are encouraged to actively participate in your treatment plan and to discuss your concerns or changes of condition with a practitioner. In addition, the review

8

determined that the sick call visit in question on 10/13/15 was for non-urgent care and for non-chronic conditions at your request. The co-pay charge was corrected as required by DOC policies; an inmate shall pay a co-pay fee for any non-emergency medical service provided at the inmate's request. No evidence of neglect or deliberate indifference has been found. Lastly, issues presented in your appeal which were not raised in your initial grievance will not be addressed. Therefore, your grievance appeal to this office is denied as well as your requested relief.

(*Id.* at p. 45).

On November 24, 2015, December 2 and 6, 2015, Lanza filed inmate request to staff member forms complaining about being charged for Tylenol and Motrin, and the process of submitting sick call requests. (Doc. 4, pp. 32, 35-37). Lanza was advised that Tylenol and Motrin are available for purchase from the commissary, and he must sign up for sick call as needed. (*Id.*).

On January 18, 2016, Lanza filed an inmate request to staff member form pertaining to his medical treatment, pain in his legs and shoulder, and skin irritation. (Doc. 4, p. 40). Lanza states that he purchased acetaminophen from the commissary, but claimed that it did not alleviate his pain. (*Id.*). Lanza was advised that his blood work was normal, he must sign up for sick call, and he was scheduled for an appointment with Defendant Moclock. (*Id.*).

In 2016, Lanza filed five additional inmate request to staff member forms complaining about Defendant Moclock and requesting treatment by a "real license[d] doctor." (Doc. 4, pp. 42, 43, 49, 50, 54). It was noted that Lanza refused to be treated by

9

Defendant Moclock, he was scheduled to be seen by Defendant Moclock, and he may sign

up for sick call. (*Id.*).

On May 30, 2017, Lanza filed a grievance complaining about his medical treatment

after undergoing back surgery. (Doc. 4, p. 59). On June 27, 2017, the grievance was

denied on initial review as follows:

> Mr. Lanza,
>
> Your grievance claims MD Moclock has refused you any and all medical
> treatment after major back surgery. You say he refuses to give you the
> treatments prescribed by your surgeon, and he refuses to give you anything
> for pain. You state because of his actions you have permanent nerve
> damage in your back and legs. You say your pain prevents you from walking
> to the chow hall and it causes you to only get 10-12 hours of sleep in a 3 day
> period. You claim it is not only physical it is becoming mental. You say you
> wake up grabbing your cell mate trying to hurt him and not knowing what
> happened. You say PTSD was reported but nothing was done. You say this
> may be because of your lack of sleep. You are also holding Karen
> Merritt-Scully evenly responsible because she knew what was going on and
> does nothing about it. You attached an inmate request to staff that you sent
> to Dr. Moclock, "Scully", and Superintendent McGinley. You state this is not
> only inhumane treatment, cruel and unusual punishment, but also torture
> which is criminal to where you state you are about to file charges. You claim
> you filed this grievance so you could get this on record.
>
> This grievance is denied. Your medical records have been reviewed, your
> medication record has been reviewed. Your consults with the neurourgeon
> have been reviewed. Your treatment since your back surgery has been
> appropriate, you were prescribed the medication recommended by your
> neurosurgeon. You are being seen in MD follow up and Neurosurgery clinic
> regularly. Your pain has been addressed with at least eight different
> medications. [ ] Dr. Moclock ordered an MRI of your spine 7-21-1-6 after your
> complaint of increased pain and it showed no new changes since surgery.
> Your EMG results were discussed with you on 3-3-17, and again on 4-5-17

and no new findings were reported. You were a no show for your MD follow up appointment on 5-19-17. On 5-26-17 you were seen in MD follow up and indicated you were []going to seek a lawyer to sue the medical doctor since you were not getting pain medications even though you refused two pain medications offered during that encounter. Your examination on 5-26-17 revealed normal flexion and normal range of motion for your spine and torso, and the MD ordered x-rays of your right shoulder since you were reporting pain in that area also.

(Doc. 4, p. 58).

Lanza subsequently filed a formal complaint against Defendants Moclock and

Boguslaw with the Professional Compliance Office of the Bureau of Professional and

Occupational Affairs. (Doc. 4, p. 61). On March 24, 2017, the Professional Compliance

Office determined that Lanza's complaints did not warrant formal prosecution. (*Id.* at p. 57).

## III. Discussion

### A. Motion to Dismiss by Moclock and Boguslaw

#### 1. Statute of Limitations

All Defendants contend that Lanza's claims should be dismissed because they are

barred by the statute of limitations. In response, Lanza contends that "[t]he statute of

limitation[s] does not start until all Administrative Remedies are exhausted." (Doc. 39, p. 4).

The running of the statute of limitations is an affirmative defense. *See* FED. R. CIV.

P. 8(c)(1). A complaint is subject to dismissal on statute of limitations grounds only when

the statute of limitations bar is apparent on the face of the complaint. *See Schmidt v.*

*Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (In the Third Circuit, a limitations defense may be

11

raised by a motion under Rule 12(b)(6) "only if 'the time alleged in the statement of a claim

shows that the cause of action has not been brought within the statute of limitations.'" *Id.*

(quoting *Robinson v. Johnson*, 313 F.3d 128, 134-35 (3d Cir. 2002) (quoting *Hanna v. U.S.*

*Veterans' Admin. Hosp.*, 514 F.2d 1092, 1094 (3d Cir. 1975))).

It is well-settled that claims brought pursuant to 42 U.S.C. § 1983 are subject to the

state statute of limitations for personal injury actions. *Wilson v. Garcia*, 471 U.S. 261, 266-

67 (1985); *Urrutia v. Harrisburg County Police Dept.*, 91 F.3d 451, 457 n.9 (3d Cir. 1996).

In Pennsylvania, the statute of limitations for a personal injury action is two years. *See* 42

Pa. C.S. § 5524. The limitations period begins to run when the plaintiff knows or has

reason to know of the injury upon which the cause of action is based, unless some

exception tolls the running of limitations period. *See Sameric Corp. of Delaware, Inc. v. City*

*of Philadelphia*, 142 F.3d 582, 599 (3d Cir.1998); *see also Nelson v. County of Allegheny*,

60 F.3d 1010 (3d Cir. 1995).

The continuing violations doctrine is an equitable exception to the running of the

statute of limitations. It applies "when a defendant's conduct is part of a continuing

practice," *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001) (quoting *Brenner v.*

*Local 514, United Bd. Of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1295 (3d Cir.

1991)), and the conduct is "more than the occurrence of isolated or sporadic acts." *Id.*

(quoting *West v. Philadelphia Elec. Co.*, 45 F.3d 744, 755 (3d Cir. 1995)). Under the

12

doctrine, a plaintiff may bring suit for otherwise time-barred acts "so long as the last act evidencing the continuing practice falls within the limitations period." *Cowell*, 263 F.3d at 292 (quoting *Brenner*, 927 F.2d at 1295). A court should consider three factors in determining the applicability of the continuing violation doctrine: (1) subject matter—similar conduct; (2) frequency—recurring or isolated conduct; and (3) degree of permanence—conduct of an unchanging nature as to trigger an awareness of and duty to assert rights. *Id.* (citing *West*, 45 F.3d at 755 n. 9). The third factor carries the most weight in the analysis. *Id.* Courts are mindful, however, that "[e]quitable tolling is a rare remedy to be applied in unusual circumstances." *Wallace v. Kato*, 549 U.S. 384, 396, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007).

In the instant action, Lanza requests this Court to entertain a federal civil rights lawsuit filed in July 2017, stemming from medical care provided in May 2011, and again in 2016. The claims related to the medical care for Lanza's shoulder in 2011 are plainly time-barred under the statute of limitations. The complaint speaks unambiguously to this issue when it alleges that Lanza suffered a separated and fractured shoulder in 2011. Additionally, Lanza states that he is seeking one million dollars for every year he has suffered, for a total of six million dollars. (Doc. 4, p. 6). Thus, Lanza was certainly aware of his purported injuries 2011 as he is seeking compensation dating back six years. However, Lanza did not file the instant action until July 2017. The Court finds that the statute of

limitations bars any claims prior to July 2015. With respect to Lanza's claims related to his back surgery in 2016, the Court finds that these claims are not barred by the statute of limitations. Accordingly, the motion to dismiss based on statute of limitations will be granted in part with respect to any claims prior to July 2015.

## 2. Eighth Amendment Medical Claim

With respect to Lanza's claims pertaining to the medical treatment after his back surgery in 2016, the Court finds that he has failed to state a claim for relief.

In order to establish an Eighth Amendment medical claim, a plaintiff must show "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Natale v. Camden Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003). See also Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention. Monmouth Cty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). In addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." Id. (citation omitted).

A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the

14

official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Thus, a complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment . . ." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). For instance, a "medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice." *Id.* at 107. "[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990). Further, a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment. *See White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990). In sum, negligence, unsuccessful medical treatment, or medical malpractice does not give rise to a §1983 cause of action, and an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. *See Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993).

Further, a non-physician defendant cannot be found deliberately indifferent under the Eighth Amendment because he or she fails to respond to the medical complaints of an inmate being treated by a prison physician, or because, as non-physicians, they defer to the medical judgment of the inmate's treating physicians. *Durmer*, 991 F.2d at 69. If, however,

non-medical prison personnel had "a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner," liability may be imposed. *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004).

A mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment. *Farmer v. Carlson*, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988). *See McCracken v. Jones*, 562 F.2d 22, 24 (10th Cir. 1977); *Smart v. Villar*, 547 F.2d 112, 113 (10th Cir. 1976).

Additionally, if there is a dispute over the adequacy of the received treatment, courts have consistently been reluctant to second guess the medical judgment of the attending physician. *Little v. Lycoming County*, 912 F. Supp. 809, 815 (M.D. Pa.), *aff'd*, 101 F.3d 691 (3d Cir. 1996). The key question is whether the defendant has provided the plaintiff with some type of treatment, regardless of whether it is what the plaintiff desires. *Farmer v. Carlson*, 685 F. Supp. at 1339.

The allegations in Lanza's complaint clearly demonstrate that he received medical attention, and that the attention he received lacks the requisite deliberate indifference to support a Section 1983 claim. From the date of back surgery in 2016, until the filing of the instant action, Lanza's complaint reflects that he was seen by medical staff and the neurosurgery clinic on numerous occasions. Throughout those visits, Lanza was provided

16

with at least eight different medications, diagnostic testing, including MRIs, EMGs, and x-rays, and referrals to outside facilities and providers. In fact, it was noted that Lanza was scheduled for treatment on several occasions, but "adamantly refused" any treatment, refused pain medications, and requested treatment from different medical professionals. (Doc. 4, pp. 42, 43). At best, Lanza's complaint demonstrates his disagreement with the decisions of medical personnel. Though he may have wished to receive different treatment for his back, his disagreement with the course of action that Defendants took based on the symptoms he presented, is not enough to state a § 1983 claim. *Sample v. Diecks*, 885 F.2d 1099, 1109 (3d Cir. 1989) (citing *Estelle*, 429 U.S. at 105-06 (in the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind)).[2]

Thus, the allegations in the complaint amount to nothing more than Lanza's subjective disagreement with the treatment decisions and medical judgment of the medical staff at the prison. This does not constitute a proper basis for a constitutional claim. At most, the allegations in the complaint only rise to the level of mere negligence. As simple

---

[2]     Even holding Lanza's complaint to the less stringent pleading standards of *pro se* plaintiffs, the allegations do not sufficiently allege deliberate indifference. The complaint and supporting exhibits do not reflect that the institution's medical staff were aware that there was an excessive risk to Lanza's health or safety but wantonly refused to provide him medical care. *Spruill v. Gillis*, 372 F.3d 218, 236 n. 12 (3d Cir. 2004) (stating that while a *pro se* complaint should be read liberally, an inmate plaintiff must still allege that defendant was aware of the risk and intentionally disregarded it).

17

negligence can not serve as a predicate to liability under § 1983, *Hudson v. Palmer*, 468 U.S. 517 (1984), Lanza's civil rights complaint fails to articulate an arguable constitutional claim. *See White*, 897 F.2d at 108-110.

Consequently, the Court will dismiss Lanza's deliberate indifference medical care claims subsequent to July 2015.[3]

### 3. Medical Co-Payments

Lanza next alleges that Defendant Boguslaw improperly charged him medical co-payments for sick call. (Doc. 4, p. 6). The Court finds that Lanza fails to state a claim of deliberate indifference arising out of his allegation that Defendant Boguslaw charged him medical co-pays. To demonstrate a prima facie case of Eighth Amendment cruel and unusual punishment based on the denial of medical care, a plaintiff must establish that the defendant acted with "deliberate indifference to [his] serious medical needs." *Estelle*, 429 U.S. at 104; *Durmer*, 991 F.2d at 67. There are two components to this standard. First, a plaintiff must make an "objective" showing that the deprivation was "sufficiently serious," or

---

[3]     Moreover, any denial of appropriate medical care claim against non-medical Defendants, Superintendent McGinley and Health Care Administrator Merritt Scully, will be dismissed, as these Defendants cannot be found deliberately indifferent to Lanza's medical needs when he was admittedly under the continual care of the prison medical staff. *Durmer*, 991 F.2d at 69. *See also Thomas v. Zinkel*, 155 F.Supp.2d 408, 413 (E.D. Pa. 2001) (Prison officials "who are not physicians cannot be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor") (citing *Durmer*, 991 F.2d at 69 n. 14)); *Newton v. Reitz*, 2009 WL 233911 (M.D. Pa. Jan. 30, 2009) ("the United States Court of Appeals for the Third Circuit held in *Durmer* that a non-physician Defendant cannot be held liable for being deliberately indifferent to an inmate's medical needs where, as here, the inmate is receiving treatment from the institution's health care staff") (citing *Durmer*, 991 F.2d at 69)).

that the result of the defendant's denial was sufficiently serious. *Wilson v. Seiter*, 501 U.S.

294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991); *see also Montgomery v. Pinchak*, 294

F.3d 492, 499 (3d Cir. 2002). Second, the plaintiff must make a "subjective" showing that

the defendant acted with "a sufficiently culpable state of mind." *Id.* The Third Circuit Court

of Appeals has found deliberate indifference when a prison official knows of a prisoner's

need for medical treatment but intentionally refuses to provide it, delays necessary

treatment for a non-medical reason, or prevents a prisoner from receiving needed medical

treatment. *Rouse*, 182 F.3d at 197.

It is well-established that allegations of a defendant's consideration of costs

associated with treating a prisoner-plaintiff's non-emergency medical condition does not

state a claim of deliberate indifference, as prisoners "do not have a constitutional right to

limitless medical care, free of the cost constraints under which law-abiding citizens receive

treatment." *Winslow v. Prison Health Servs.*, 406 F. App'x 671, 674 (3d Cir. 2011) (citing

*Reynolds v. Wagner*, 128 F.3d 166, 175 (3d Cir. 1997)) ("[T]he deliberate indifference

standard of *Estelle* does not guarantee prisoners the right to be entirely free from the cost

considerations that figure in the medical-care decisions made by most non-prisoners in our

society."); *Caines v. Hendricks*, 2007 WL 496876, at *8 (D. N.J. Feb.9, 2007) ("[I]t is not a

constitutional violation for prison authorities to consider the cost implications of various

procedures, which inevitably may result in various tests or procedures being deferred unless

absolutely necessary."); *see also Brown v. Beard*, 445 F. App'x at 456 (citing *Reynolds*, 128 F.3d at 175) ("prisoners do not have a constitutional right to limitless medical care"). In accordance with this well-settled case law, Lanza has failed to establish an Eighth Amendment violation with respect to his claim that Defendant Boguslaw was deliberately indifferent when she charged him medical co-pays.

To the extent that Lanza alleges a violation of his Fourteenth Amendment rights with regard to the medical co-pays, this claim also fails. To establish a due process violation under the Fourteenth Amendment a plaintiff must demonstrate that the defendants deprived him of either a property or liberty interest. *Daniels v. Williams*, 474 U.S. 327, 339 (1986). Property rights are basic civil rights and a deprivation of property without due process gives rise to a claim under section 1983. *Lynch v. Household Fin. Corp.*, 405 U.S. 538, 552, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972). Inmates have a protected property interest in the funds in their prison accounts. *Reynolds*, 128 F.3d at 179. Accordingly, "inmates are entitled to due process with respect to any deprivation of money [from their accounts]." *Higgins v. Beyer*, 293 F.3d 683, 693 (3d Cir. 2002) (citations omitted).

In *Reynolds*, the Third Circuit Court of Appeals upheld the constitutionality of a county prison policy, which assessed small co-payments for medical care. 128 F.3d 166. The inmate handbook explained certain exceptions to the medical co-pay requirement. *Id.* An inmate who disagreed with a fee assessment, could file a grievance on the matter. *Id.*

20

In finding no violation of the Due Process Clause, the Court noted: "Moreover, this is not a situation in which the inmates are deprived of the benefits of their property and receive nothing in return; rather in exchange for the fees, the inmates receive the benefit of health care, the value of which undoubtedly exceeds the modest fee assessed." *Id.* In another case, the Third Circuit found that the inmate received adequate due process for the deduction of a medical co-pay taken out of his account "because he took advantage of an adequate post-deprivation remedy—the grievance process—to challenge [the] assessment." *Dockery v. Beard*, 509 F. App'x 107, 114 (3d Cir. 2013).

In the instant action, Lanza had an adequate post-deprivation remedy in the form of the Department's inmate grievance system. The courts recognize that the post-deprivation remedy provided through DOC's Grievance policy, DC-ADM 804, and Pennsylvania state law are adequate to provide inmates with procedural due process protection from the taking of co-pay funds from their accounts. *See, e.g., Scott v. Angelone*, 1992 WL 354598, *4 (9th Cir. 1992) (unpublished disposition) (finding advanced notice of program's implementation and right to file grievance with respect to particular charges constitute adequate pre- and post-deprivation procedures sufficient to protect inmate's due process rights under inmate co-pay program); *Reynolds v. Wagner*, 936 F.Supp. 1216, 1228 (E.D. Pa.1 996) (same); *Morales v. Beard*, 2009 WL 2413425, *1 (W.D. Pa. 2009) (same); *Robinson v. Fauver*, 932 F.Supp. 639, 645 (D. N.J.1996) (rejecting equal protection and due process challenges to

New Jersey's inmate co-payment system); *Johnson v. Dep't of Public Safety*, 885 F.Supp. 817, 821 (D. Md.1995) (rejecting due process challenge). The DOC grievance system provides an adequate post-deprivation remedy to protect Lanza's due process rights. Lazna acknowledges that he used the grievance system to complain about the deduction of the medical co-payments from his prison account, and has provided copies of his grievances related to this claim. (Doc. 4). Lanza was provided with all the due process to which he was entitled with respect to the assessment of medical co-pays and the fact that he may disagree with the resolution of his grievances does not state a claim for a violation of due process. *See Iseley v. Horn*, 1996 WL 510090, at *6 (E.D. Pa. Sept. 3, 1996) (the existence of either an internal grievance program or the ability to file a state tort action foreclose any due process claim "even if [the] inmate is dissatisfied with the result of the process.").

Lanza also suggests that he was unfairly charged a co-pay for a condition which he believes should be classified as "chronic." (Doc. 4, p. 6). The Court takes judicial notice of Department of Corrections Policy Statement, DC-ADM 820, which states that if a medical condition falls under one of the very limited categories defined as "chronic" by the DOC, which includes asthma, congestive heart failure, coronary artery disease, diabetes, dislipidemia, hepatitis C, HIV, and hypertension, an inmate is not required to pay a co-pay for sick call visits and medications related to this chronic condition. *See*

http://www.cor.pa.gov/. Neither back nor leg pain is a "chronic condition" pursuant to the DOC policy and, therefore, even if Lanza's condition is recurrent and ongoing, a co-pay is required for treatment of the same.

Furthermore, to the extent Lanza claims that Defendant Boguslaw falsified medical records, (Doc. 4, p. 6), this does not support a finding of deliberate indifference as Lanza fails to state how this impacted his medical care. *Rivera v. Tennis*, 2010 WL 2838603 (M.D. Pa. May 20, 2010), *see also Rega v. Beard*, 2011 WL 7094571, at *6 (W.D. Pa. Dec. 13, 2011) ("[M]erely lying to a patient does not constitute deliberate indifference."); *Moore v. Casselberry*, 584 F. Supp. 2d 580, 582 (S.D.N.Y. 2008) (the conclusory statement that the defendant nurse filed an incomplete or false medical report does not state a federal constitutional violation).

Therefore, the Court will grant the motion to dismiss on this ground.

### 4. Purchasing Motrin from the Prison Commissary

Lanza also fails to state a claim under the Eighth Amendment with respect to his claim that he was required to purchase Motrin from the prison commissary. Lanza acknowledges that he has received medical treatment while housed at SCI-Coal Township, but he is dissatisfied that he was instructed to purchase Motrin from the commissary. Lanza does not assert that he was unable to afford the medication, and he has not set forth any allegations that would indicate that advising him to purchase Motrin from the commissary

23

was intended as a form of punishment. Instead, the relevant prison policy provides:

> Medical staff will advise inmates when OTC's (over the counter) medications are available in the commissary. If an inmate elects to receive OTC medications during a sick call visit, co-pay fees will apply. An inmate, who is in need of OTC medications that are not available in the commissary, will be addressed as outlined in Subsection B.1. above.

DC-ADM 820, § 2B.2. The policy defines over-the-counter medication as: "[m]edications that can be obtained/ purchased without a prescription; may be available through the commissary." DC-ADM 820.

Lanza primarily appears to be dissatisfied with the medical care provided. Lanza is not entitled to convert his dissatisfaction with medical care into a constitutional claim. Lanza's personal opinions as to how Motrin should be provided to inmates amounts to nothing more than a difference of opinion as to a course of treatment. But "mere disagreement as to the proper medical treatment" does not amount to a constitutionally cognizable claim. *See Spruill,* 372 F.3d at 235 (citing *Monmouth Cty.,* 834 F.2d at 346); *see also Norris v. Frame,* 585 F.2d 1183, 1186 (3d Cir. 1978) ("Where the plaintiff has received some care, inadequacy or impropriety of the care that was given will not support an Eighth Amendment claim."). The Court will grant the motion to dismiss on this ground.

### 5. Motion to Strike

Federal Rule of Civil Procedure 12(f) allows the court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

Immaterial matter is "that which has no essential or important relationship to the claim for relief." *Del. Health Care, Inc. v. MCD Holding Co.*, 893 F. Supp 1279, 1291-92 (D. Del. 1995). Impertinent matter "consists of statements that do not pertain, and are not necessary, to the issues in question." *Id.* Scandalous matter has been defined as 'that which improperly casts a derogatory light on someone, most typically on a party to the action.'" *Carone v. Whalen*, 121 F.R.D. 231, 233 (M.D. Pa. 1988). "Scandalous pleading must 'reflect cruelly' upon the defendant's moral character, use 'repulsive language' or 'detract from the dignity of the court.'" *Id.* "The purpose of the provision is to clean-up the pleadings, streamline the litigation and avoid inquiry into irrelevant matters." *Medevac Atlantic, LLC v. Keystone Mercy Health Plan*, 817 F. Supp. 2d 515, 520 (E.D. Pa. 2011). "[A]lthough Rule 12(f) grants the court the power to grant a motion to strike, such motions are not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues." *Dann v. Liacola Nat'l Corp.*, 274 F.R.D. 139, 142-43 (E.D. Pa. 2011) (internal quotations marks omitted). Rule 12(f) should not be used to determine disputed and significant questions of law. *Id.* However, "[d]espite courts' distaste for striking pleadings and portions thereof, doing so is appropriate when the type or amount of relief sought is unavailable under law." *Medevac*, 817 F. Supp. 2d at 520. Regardless, striking a pleading is a "drastic remedy" that should be "sparingly used by courts." *N. Penn Transfer, Inc. v.*

*Victaulic Co. of America*, 859 F. Supp. 154, 158 (E.D. Pa. 1994).

Here, Lanza states that Defendant Moclock allegedly abused drugs and alcohol between 1999 and 2001, and again in 2004. (Doc. 4, p. 7). Lanza asserts that Defendant Moclock underwent a mental health and physical examination, and was allegedly diagnosed with opioid dependence, alcohol dependence, and major depression. (*Id.*). Lanza further states that Defendant Moclock is "believed" to be charged with driving under the influence in 2014. (*Id.*). Having reviewed the complaint, the Court concludes that these particular allegations have no possible relation to the § 1983 claim before the Court, and are prejudicial to Defendant Moclock. Lanza does not allege that Defendant Moclock was under the influence of drugs or alcohol while treating him. Furthermore, the purported actions of Defendant Moclock allegedly occurred at least seven years prior to the medical treatment that is the subject of the complaint. The Court finds that the cited allegations are immaterial, impertinent, or scandalous, and Defendants' Rule 12(f) motion will be granted.

## B.   Wexford's Motion to Dismiss

Wexford moves to dismiss all claims against it based on two grounds. (Doc. 24). First, Wexford states that its contract to provide prison services expired on August 31, 2014, and therefore any claim arising since August 31, 2014 post-dates the period of time during which Wexford was the contracting entity with the Commonwealth. (*Id.* at ¶¶ 10, 12). Second, Wexford argues that any claim arising prior to August 31, 2014 is clearly barred by

the statute of limitations. (*Id.* at ¶ 11). The Court agrees on both grounds.

It is clear that Wexford had no authority to dictate Lanza's care subsequent to the termination of its contract with the DOC on August 31, 2014. (*see* Release and Amendment to contract, modifying the expiration date of the contract between the Commonwealth and Wexford Health Sources, Inc. to August 31, 2014, available at https://contracts.patreasury.gov/Admin/Upload/314505_AGR-15-213%20Wexford%20Healt h%20Sources,%20Incorporated.pdf). Thus, any claim arising since August 31, 2014 post-dates the period of time during which Wexford was the contracting entity with the Commonwealth, and Wexford ceased to have any control over Lanza's health care upon the termination of its contract on August 31, 2014. Furthermore, based on the standards set forth above, any claim against Wexford arising prior to August 31, 2014 is time-barred by the applicable statute of limitations. (Doc. 24). Consequently, the Court will grant the motion to dismiss filed by Wexford.

## IV.   Leave to Amend

When a complaint fails to present a prima facie case of liability, district courts must generally grant leave to amend before dismissing the complaint. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000). Specifically, the Third Circuit Court of Appeals has admonished that when a complaint is subject to dismissal for failure to state a claim, courts should liberally grant

27

leave to amend "unless such an amendment would be inequitable or futile." *Phillips*, 515

F.3d at 245 (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)). For the reasons set

forth above, granting leave to amend would be futile.

## V.    Conclusion

Based on the foregoing, the Court will grant the motions to dismiss filed by

Defendants Moclock, Boguslaw, and Wexford, and dismiss all claims against Defendants

Merritt Scully and McGinley.[4] A separate Order shall issue.

Dated: June 20, 2018

Robert D. Mariani
United States District Judge

---

[4]    To the extent that Lanza is seeking the initiation of criminal charges against Defendants (*see* Doc. 25), this Court has no authority to grant, as relief, the initiation of any criminal prosecution against Defendants. Moreover, Lanza has no authority to prosecute criminal a criminal case against Defendants. *See United States. v. Friedland*, 83 F.3d 1531, 1539 (3d Cir. 1996) ("[T]he United States Attorney is responsible for the prosecution of all criminal cases within his or her district."); *Conception v. Resnik*, 143 F. App'x 422, 425-26 (3d Cir. 2005) (non-precedential) (a private person in a federal civil action could not impose criminal liability on a defendant because he lacked standing to do so).